No.: 15-15708-D

## In The United States Court Of Appeals
## For The Eleventh Circuit

**MAHALA CHURCH et al.**
Plaintiff-Appellant,

vs.

**ACCRETIVE HEALTH, INC.**
Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA,
MOBILE DIVISION
CIVIL ACTION NO.: 1:14-CV-00057-WS-B

## APPELLANT BRIEF

Earl P. Underwood, Jr.
**Underwood & Riemer PC**
**21 South Section Street**
**Fairhope, Alabama 36532**
**251.990.5558**
*Counsel for the Appellant*

**February 16, 2016**

No.: 15-15708-D

# In The United States Court Of Appeals For The Eleventh Circuit

**MAHALA CHURCH et al.**
Plaintiff-Appellant,

**vs.**

**ACCRETIVE HEALTH, INC.**
Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA,
MOBILE DIVISION
CIVIL ACTION NO.: 1:14-CV-00057-WS-B

## APPELLANT BRIEF

**Earl P. Underwood, Jr.**
**Underwood & Riemer PC**
**21 South Section Street**
**Fairhope, Alabama 36532**
**251.990.5558**
*Counsel for the Appellant*

**February 16, 2016**

**15-12296-F**
*Mahala Church v. Accretive Health, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

COMES NOW appellant, Mahala Church, and pursuant to FRAP 26.1-1, by and through the undersigned Counsel of record and certifies that the following is a full and complete list of all interested parties in this action:

1.    Mahala Church, Appellant;

2.    Accretive Health, Inc., Appellee;

3.    Hon. Magistrate Judge Sonja F. Bivins, United States District Court, Southern District of Alabama, Mobile Division;

4.    Hon. Chief Judge William H. Steele, United States District Court, Southern District of Alabama, Mobile Division;

5.    Earl P. Underwood, Jr., Attorney for Plaintiff-Appellant Mahala Church;

6.    Kenneth J. Riemer, Attorney for Plaintiffs-Appellant Mahala Church;

7.    Andrew Brian Clubok, Attorney for Defendant-Appellee Accretive Health, Inc.;

8.    Claire M. Murray, Attorney for Defendant-Appellee Accretive Health, Inc.;

9.    Jennifer G. Levy, Attorney for Defendant-Appellee Accretive Health, Inc.;

10.    Kathleen A. Brogan, Attorney for Defendant-Appellee Accretive Health, Inc.;

ii

11.    Sandy G. Robinson, Attorney for Defendant-Appellee Accretive Health, Inc.;

12.    Kirkland & Ellis, LLP, Law Firm representing Defendant-Appellee Accretive Health, Inc.;

13.    Cabaniss, Johnston, Gardner, Dumas & O'Neal, Law Firm representing Defendant-Appellee Accretive Health, Inc.; and

14.    Underwood & Riemer, PC, Law Firm representing Plaintiff-Appellant, Mahala Church.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant submits that oral argument may be helpful because this is a case of first impression.  This case presents a fundamental question regarding Fair Debt Collection Practices Act coverage of debts that are undisputedly past when referred to a third party collector.  In turns on the definition of "default" as used in the FDCPA.  In the decision below the district court, citing 15 U.S.C. § 1692a(6)(F)(iii), held that there was no FDCPA coverage.  Specifically, the lower court found that a debt was not in default, as a matter of law, despite the undisputed fact that the debt at issue was over a year past due.

# TABLE of RECORD REFERENCES in the BRIEF

**Brief Page No.**                                                    **Docket No.**

1                    Plaintiff's Complaint....................................................................1

1                    Defendant's Motion to Dismiss ...............................................21

1                    Plaintiff's Amended Complaint ................................................41

2                    Plaintiff's Memorandum...........................................................48

2                    Order .......................................................................................56

2                    Defendant's Answer to Amended Complaint ...........................58

2                    Plaintiff's Second Amended Complaint ...................................81

2                    Defendant's Answer to Second Amended Complaint .............84

2                    Defendant's Motion for Summary Judgment ..........................91

1, 2, 6, 10-12       Plaintiff's Opposition ............................................................102
14,18                Plaintiff's Exhibits *Filed Under-Seal* ........................... Envelope

2                    Defendant's Motion for Leave................................................105
                     Defendant's Reply & Exhibits *Filed Under-Seal* ........ Envelope

2, 20                Order .....................................................................................111

2                    Final Judgment .....................................................................112

1, 13                Plaintiff's Notice of Appeal...................................................118

3, 4, 5, 6, 7,8,     Defendant's Notice of Redacted Exhibits
9, 10, 11            Re: Plaintiff's Opposition to Defendant's
                     Motion for Summary Judgment……………………………..123

v

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................... iv

TABLE OF RECORD REFERENCES IN BRIEF ................................................. v

TABLE OF CONTENTS ................................................................................. vi

TABLE OF AUTHORITIES ............................................................................ viii

JURISDICTIONAL STATEMENT ..................................................................... ix

STATEMENT OF THE ISSUE .......................................................................... 1

STATEMENT OF THE CASE ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

SUMMARY OF ARGUMENT ........................................................................... 13

ARGUMENT ................................................................................................ 14

   I.   INTRODUCTION ............................................................................... 14

   II.   CHURCH'S DEBT WAS IN DEFAULT BECAUSE IT WAS NOT PAID ON DISCHARGE OR AT THE TIME OF SERVICE. ....................................... 15

   III.   THE FACT THAT ACCRETIVE NOW RECOGNIZES THAT THE DEBT WAS NOT OWED IS IMMATERIAL. ......................................................... 25

CONCLUSION ............................................................................................. 27

CERTIFICATE OF SERVICE ........................................................................... 28

## TABLE OF AUTHORITIES

*Alhassid v. Bank of Am.,* N.A., 60 F. Supp. 3d 1302
(S.D. Fla. Nov. 17, 2014) .......................................................................26

*Alibrandi v. Financial Outsourcing Services, Inc.,* 333 F.3d 82, 87
(2nd Cir.2003) ..........................................................................20, 21, 24

*Anger v. Accretive Health, Inc.,* 2015 WL 5063269
(E.D. Mich. Aug. 27, 2015) ...................................................................19

*Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355, 362 (6th Cir. 2012) ..................26

*De Dios v. Int'l Realty & Investments,* 641 F.3d 1071, 1074 (9th Cir. 2011)...........15

*Donnelly-Tovar v. Select Portfolio Servicing, Inc.,* 945 F. Supp. 2d 1037, 1044-47
(D. Neb. 2013). .....................................................................................26

*Dunham v. Portfolio Recovery Associates, LLC,* 663 F.3d 997, 1002 (8th Cir. 2011)
......................................................................................................26

*Echlin v. Dynamic Collectors, Inc.,* 102 F. Supp. 3d 1179
(W.D. Wash. 2015) ..........................................................................18, 19

*F. T. C. v. Check Inv'rs, Inc.,* 502 F.3d 159, 172, (3d Cir. 2007) ..........................15

*Hartman v. Meridian Financial Services,* 191 F. Supp.2d 1031
(W.D.Wis.2002).....................................................................................16

*Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 611
(6th Cir.2009)…………………………………………………………………..24

*Isaac v. RMB, Inc.,* 2014 WL 3566069, slip op. at 9 (N.D. Ala. July 18,
2014)……………………………..…………………………………………..26

*Kelliher v. Target Nat. Bank,* 826 F. Supp. 2d 1324, 1330 (M.D. Fla. 2011).........24

*Kimber v. Fed. Fin. Corp.,* 668 F. Supp. 1480, 1485 (M.D. Ala. 1987) ................25

vii

*LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1191 (11th Cir.2010) .............24

*Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, (S.D. Ind. 2007)....................14

*McKinney v. Cadleway Properties, Inc*, 548 F.3d 496, 501-02 (7th Cir. 2008) .....18

*Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1304 (11th Cir. 2015)..........24

*Prince v. NCO Fin. Servs., Inc*, 346 F. Supp. 2d 744, 748 (E.D. Pa. 2004) .....16, 18

*Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534 (7th Cir. 2003) ....................26

*Simmons v. Med-I-Claims*, 2007 WL 486879, slip op. at 8
(C.D. Ill. Feb. 9, 2007) ............................................................................................20

*Skerry v. Massachusetts Higher Education Assistance Corp.*, 73 F.Supp.2d 47,
(D.Mass.1999)....................................................................................................16, 18

*Winterstein v. CrossCheck, Inc.*, 149 F.Supp. 2d 466, 470
(N.D. III 2001) ....................................................................................................16, 25

## STATUTES

28 U.S.C. § 1331 .....................................................................................................ix

28 U.S.C. § 1294(1) ...............................................................................................ix

28 U.S.C. § 1291 ...............................................................................................ix, 24

15 U.S.C. § 1692a(6)(F)(iii) .......................................................................14, 15, 17

15 U.S.C. § 1692(e) ................................................................................................24

## OTHER

Blacks Law Dictionary 449 (8th ed. 2004)………………………………………..15

## JURISDICTIONAL STATEMENT

A.    District Court Jurisdiction

This action included claims arising under the statutes of the United States and jurisdiction in the United States District Court for the Southern District of Alabama is conferred by 28 U.S.C. § 1331.

B.    Appellate Jurisdiction

Jurisdiction of the Eleventh Circuit Court of Appeals is invoked under 28 U.S.C. § 1294(1) and 28 U.S.C. § 1291. The Appellate Court has jurisdiction pursuant to the District Court's granting of Defendant's Motion for Summary Judgment on May 11, 2015. Church's Notice of Appeal was timely filed on December 21, 2015.

## STATEMENT OF THE ISSUES

The Defendant, Accretive Health, Inc., among other things, collects medical debts. In the case below Plaintiff owed a debt to Providence Hospital, one of Accretive's clients. It was undisputed that Providence Hospital, the creditor, has a publicly published policy that all unpaid patient balances are due on discharge or at time of service. The undisputed facts below were that Plaintiff did not pay her balance on discharge and her obligation was over a year past due, when Accretive assumed collection responsibility. Nevertheless, the Court below found that Ms Church's debt was not in default and, therefore, there was no FDCPA coverage. The question presented is did the lower court err when it found the debt was *not* in default when it was acquired by the Defendant Accretive for collection.

## STATEMENT OF THE CASE

On February 11, 2014, Mahala Church filed her Complaint in the Southern District of Alabama. (Doc. 1). Accretive Health, Inc., ("Accretive") filed a Motion to Dismiss and, in the Alternative, Motion for Summary Judgment on May 27, 2014. (Doc. 21). Church filed a Memorandum in Opposition to Motion to Dismiss on July 16, 2014. Church filed her Amended Complaint on July 28, 2014. (Doc. 41). On August 15, 2014 Accretive filed its Motion to Dismiss. (Doc. 43). Church filed her

Memorandum in Opposition on September 12, 2014. (Doc. 48). The motion to dismiss was denied. (Doc. 56).

Accretive answered the Amended Complaint on December 30, 2014. (Doc. 58). On June 3, 2015, Church filed her Second Amended Complaint ("SAC"). The SAC narrowed the class definition to those persons who owed a balance to Providence Hospital. (Doc. 81). Accretive filed its Answer to the Second Amended Complaint on June 22, 2015. (Doc. 84) Accretive filed a Motion for Summary Judgment on August 31, 2015. (Doc. 91). On October 5, 2015, Church filed her Opposition to the Motion for Summary Judgment. (Doc. 102). On October 26, 2015, Accretive filed its Reply. (Doc. 105). On November 24, 2015, the Motion for Summary Judgment and denying Plaintiff's Motion to Exclude New Evidence was denied. (Doc. 111). On the same date, the lower Court entered a Final Judgment in favor of Accretive and dismissed the case with prejudice. (Doc. 112). Church timely filed her Notice of Appeal on December 21, 2015. (Doc. 118).

## STATEMENT OF FACTS

Plaintiff Ms Mahala Church is a retired hospital administrator.  (Doc. 123-1 Church Depo. at p. 3 at 12:5-7). In November 2012 she was seen at Providence Hospital for preoperative treatment in anticipation of a hip replacement. This was done on an outpatient basis. (Doc. 123-1 Church Depo. at p. 5 at 22:8-17).   On December 18, 2012 Ms Church was admitted to Providence Hospital for a total hip replacement.  (Doc. 123-1 Church Depo. at p. 6-7 at 23:21-25 and 24:2-4). She was released from the hospital on December 21, 2012.  (Doc. 123-1 Church Depo. at p.7 at 24:5-11 and 25:2-6).

When she was released she was not billed or told that she owed any money. (Doc. 123-1 Church Depo. p. 8 at 25:9-13, p. 9 at 26:9-11). At that time, it was Ms Church's belief that by having the surgery before the end of the year, i.e., December 31, that she would not owe any deductible and that her bill would be fully paid by her insurance company. (Doc. 123-1 Church Depo. p. 10 at 29:11-15). In January or February of 2013 Ms Church called the hospital to see if she owed a balance on a prior bill because she was anticipating filing a bankruptcy petition. (Doc. 123-1, Church Depo. p. 11 at 30:2-21; p. 12 at 31:2-8).

In mid-January 2014, however, Ms Church received a collection letter from Accretive, doing business as Medical Financial Solutions ("MFS"), stating that she

3

owed Providence Hospital $1,944.80.  The date of service was stated as December 18, 2017. (Doc. 123-1, Church Depo. p. 16 at 41:2-7). This was her initial contact with Medical Financial Solutions and Accretive Health. (Doc. 123-1 Church Depo. p. 16 at 41:15-20).

Ms Church believed the purpose of the letter was to collect money from her. (Doc. 123-1 p. 16 at 41:21-24; p. 17 at 42:5-8). She also believed she had been turned over to a collection agency. (Doc. 123-1 Church Depo. p. 17 at 42:17-18). The letter from Accretive caused Ms Church to become upset and angry.  (Doc. 123-1 Church Depo. p.21 at 84:25, p. 22 at 85:2-16).

Ms Church called Providence Hospital and talked to someone in the billing department, asking why she had been turned over for collection, and was told that she owed a deductible for her surgery from December 2012. (Doc. 123-1 Church Depo. p. 19 at 46:3-12). Ms Church explained to the clerk that she did not owe a deductible for that surgery to Providence Hospital.  (Doc. 123-1, Church Depo. at p. 20 at 48:2-4).

Donna Bragg is the business office manager at Providence Hospital.  (Doc. 123-2, Bragg Depo, p. 3 at 13:19-20). According to Bragg, Providence Hospital billed Ms Church for the debt in error.  (Doc. 123-2, Bragg Depo, p. 3, at 22:1-4). She explained that Ms Church had an account number at Providence Hospital ending in

4

"627". (Doc. 123-2, D. Bragg Dep., p. 5 at 24:5-7). Then, on January 10, 2014 charges from a "pre-admit" account were added to that account number causing the account to have an active balance. Due to the age of the account, it was referred to MFS (Accretive) for collection. Ms Church. (Doc. 123-2, D. Bragg Dep., p. 6 at 31:21-23, p. 7 at 32:1, 2, 5-15). The account was set up with MFS as a patient balance after insurance. (Doc. 123-2, D. Bragg Dep., p. 8-9 at 33, 34).

Typically, when a patient is discharged with a balance owing Providence will send a bill if the insurance has already paid. (Doc. 123-2, D. Bragg Dep., p.15 at 43:21-23; p.16 at 44:1-3). After the account has been billed for a 60-day period it changes from a Financial Class A to Financial Class I then referred to MFS for collection. (Doc. 123-2, D. Bragg Dep., p. 17 at 45:18-23; p. 18 at 46:1-6,7-13).

Providence Hospital has a policy that all medical bills not paid by insurance are due when a patient is discharged. "So that people know what to expect when they are admitted," one of the things they are given is a document exemplified by a Document No. 30 (Doc. 123-2, D. Bragg Dep., p. 19 at 52:21-23). Among other things, the brochure says that the patient's portion of the bill is due at time of service. At the time of giving the deposition this was Providence Hospital's policy. (Doc. 123-2, D. Bragg Dep., p.20 at 53:21-22). At the time of the Bragg deposition the

form, exemplified by Document No. 30, was still in use.  (Doc. 123-2, D. Bragg Dep., p.20 at 53:21-22).

Providence's business office employees are to exhaust every effort to collect any balance due at discharge. (Doc. 102-6 Ex. D, Code No. 501.28, ALMOB000068). It is the policy of Providence Hospital that any balance a patient owes is due on discharge.  (Doc. 123-2, D. Bragg Dep., p. 22 at 64:2-4,14-21).  It is also the policy of Providence Hospital that charges not estimated to be covered by insurance are payable at the time of discharge.  (Doc. 123-2, D. Bragg Dep., p. 22 at 64:10-13). Providence states on its website that charges not covered by insurance are payable at time of discharge.  (Doc. 123-2, D. Bragg Dep., p. 23 at 65:7-14). The website also explains that a patient's portion of the bill is due at discharge.  (Doc. 123-2, D. Bragg Dep., p. 23 at 65). Providence Hospital also has a policy to make every effort to collect the balance full for services rendered.  (Doc. 123-2, D. Bragg Dep., p. 24 at 68:3-6; *see also,* Doc. 123-2 at p. 42, P's Ex. 3 to Bragg Dep., ALMOB000090).

Regarding emergency room or outpatient or at time of discharge if inpatient Providence Hospital has a policy that patient balances are due in full at time of service.  (Doc. 123-2, D. Bragg Dep., p. 25 at 69:8-9; *see also,* Doc. 123-2 at p. 39, P's Ex. 3 to Bragg Dep., ALMOB000100).  This policy would have applied to Ms Church if she had owed a balance.  (Doc. 123-2, D. Bragg Dep., p. 25 at 69:18-22; p.

6

26 at 70:3-4).   Upon discharge the patient and/or guarantor should be asked for payment of the balance due in full.  (Doc. 123-2, D. Bragg Dep., p. 27 at 71:2-4, *see also,* Doc. 123-2 at p. 40, P's Ex. 3 to Bragg Dep., ALMOB000105). This reflects that the policy of Providence Hospital is that all balances due should be paid in full upon discharge.  (Doc. 123-2, D. Bragg Dep., p. 28 at 72:3-6; *see also,* Doc. 123-2 at p. 41, P's Ex. 3 to Bragg Dep., ALMOB000129).

Accretive called Ms Church on January 17, 2014 and left her a voice-mail message regarding the debt at issue.  (Doc. 123-2, D. Bragg Dep., p. 29 at 86:17-20). On February 17, 2014 Ms Church's account was transferred to Bad Debt.  (Doc. 123-2, D. Bragg Dep., p. 30 at 88:2-8). The term "pre-collect" is not defined in any of Providence's policies or procedures. (Doc. 123-2, D. Bragg Dep., p. 31 at 96:17-22). The charges at issue were incurred in November 2012.  (Doc. 123-2, D. Bragg Dep., p. 33 at 100:13-14).

If a patient's bill is not paid after the hospital has sent them two statements, the account changes from a Financial Class A to a Financial Class I and referred to Accretive, dba MFS, for collection.  (Doc. 123-2, D. Bragg Dep., p. 34 at 101:7-9). It is the policy of Providence Hospital that all possible collection efforts should be exhausted before an account is determined to be uncollectable.  (Doc. 123-2, D. Bragg Dep., p. 35 at 103:4-22).

Daniel Graves' job title at Accretive Health is Manager of Operations. (Doc. 123-3, D. Graves Dep., p. 3 at 4:18-19). Persons who received treatment for medical services are not customers of Accretive. (Doc. 123-3, D. Graves Dep., p. 4 at 11:21-24; p. 5 at 12:1). During a one-year period Accretive mailed roughly 50,000 letters on behalf of Providence Hospital, exemplified by the letter sent to Ms Church, to 25,000 unique guarantors. (Doc. 123-3, D. Graves Dep., p. 6 at 22:22-24; *see also*, Ex. B, *Collection Letter*). Accretive provides end-to-end revenue cycle management services. The two ends being from a point where the patient is admitted to the final resolution of the account. (Doc. 123-3, D. Graves Dep., p. 7 at 27:20-24). According to Graves, The MFS operation is for "early out" and "pre-collect work." (E Doc. 123-3, D. Graves Dep., p. 8 at 28:12-13). Payer follow up and billing is a large part of Accretive's services. (Doc. 123-3, D. Graves Dep., p. 9 at 29:16-17). Accretive is compensated by a fixed fee or base payment for services it provides. (Doc. 123-3, D. Graves Dep., p. 10 at 30:15-16). In addition, there is an "incentive component" which is calculated based on "benefit we deliver to the hospital." (Doc. 123-3, D. Graves Dep., p. 10 at 30:20-24). Accretive does all the insurance billing for Providence Hospital as part of its service. (Doc. 123-3, D. Graves Dep., p. 11 at 31:9-11).

8

Mr. Graves could not identify another hospital that has a policy that the patient's balance is due at the time of service or discharge.  (Doc. 123-3, D. Graves Dep., p. 28 at 49:24; p. 29 at 50:1-7, 21-24; p. 30 at 51:1-4).   Accretive does not consider a debt to be in default until the balance has been written off as bad debt.  (Doc. 123-3, D. Graves Dep., p.31 at 53:22-24).  According to Graves, at Providence Hospital, 60 days after insurance has adjudicated a patient's claim the patient's balance is then referred to Accretive and after Accretive has made every attempt to collect it for a minimum of 90 days the account could be placed into bad debt and referred to other collection agencies.  (Doc. 123-3, D. Graves Dep., p. 32 at 57:12-15; 20-24). After Providence Hospital has billed a patient twice the patient's account moves from a Financial Class A to a Financial Class I and that account is then referred to Accretive for collection.  Accretive then takes a number of steps to help resolve the balance and will do that for a minimum of 90 days.  (Doc. 123-3, D. Graves Dep., p. 34 at 64:20-22; p. 35 at 65:1-2; 10-12).

Accretive's telephone collectors are paid commission for their successful collection efforts.  (Doc. 123-3, D. Graves Dep., p. 35 at 65:16-18).  According to Graves the January 17, 2014 letter was the initial communication from Accretive to Ms Church.  (Doc. 123-3, D. Graves Dep., p. 36 at 74:19-21). Accretive uses three pre-collect letters according to Graves.   These are EB1, EB2, EB3 and are

9

exemplified by Accretive's Document Production Nos. 214 through 215. (Ex. E, D. Graves Dep., at 89:9-21; *see also,* Doc. 102-8, Ex. F, Accretive Doc. Prod., ACC0000214-215).

Accretive's expert Dr. Holder spent approximately 100 hours preparing his expert report. (Doc. 123-3, Holder Dep., at 16: 8-9). According to William Holder's Expert report, at page 3, paragraph 10, his billing rate for preparation of the report was $800.00 per hour. (Def. Ex. D to Motion for Summary Judgment). The current report of Mr. Holder is the first time he has been involved with any issues related to the Fair Debt Collection Practices Act. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 17:12-16). Dr. Holder's focus was on the accounting that was taking place and not legal aspects of the case per se. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 18:24-25; 23:6-8; see also, (Def. Ex. D to Motion for Summary Judgment, at p. 3 ¶9).

It was Dr. Holder's opinion that a debt owed to Providence Hospital must be written off by the hospital before it can be in default. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 23:13-17, 21-25; 24:1-2). Holder also stated that a hospital bill with a date of service of December 18, 2012 would not necessarily be in default on January 17, 2014. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 24:21-22). (P's Ex. 1 to W. Holder Dep., Exp. Rpt W. Holder, at p.

4 ¶¶14, 15). Holder, in his deposition, actually used two definitions for default. The first one of those being that a debt had become probable of non-collection and the second was that the debt had been written off. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 24:25; 25:1-10). Dr. Holder did opine that a debt that was included in a bankruptcy case would be considered in default or not. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 28:17-25; 29:1-5).

Dr. Holder was generally familiar with the definition of bad debt used by the Internal Revenue Service; however, he was unable to express an opinion when asked regarding if the definition of bad debt used by Providence Hospital and the definition of bad debt used by the Internal Revenue Service were the same. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 37:15-19; 38:1-7). According to Holder, when a debt becomes probable of non-collection it should be written off and reduced as a specific receivable as it is written down or written off. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 40:4-10, 12-18). The bad debt process at Providence Hospital requires the hospital to exhaust all collection efforts and determine that a debt is uncollectible before it's recognized as bad debt. (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 47:14-19; *see also,* Doc. 102, Ex. F, Accretive Doc. Prod., ACC0000214) When questioned, Dr. Holder could not describe Providence Hospital's policy with regard to referring debts to

11

Medical Financial Solutions.  (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 49:5-12, 19-25; 50:14-20).

It was Holder's understanding that when a bill from Providence moves from a Class A to a Class I it is referred to Medical Financial Solutions.  (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 53:12-17). It was Holder's opinion that Providence Hospital would follow its procedures as outlined in its policy and procedure manual for collecting balances at discharge before referring an account to Accretive.  (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 56:20-23, 57:6-14; 58:3-7). It was Holder's opinion that even though Providence had a policy that a patient's balance was due in full upon discharge and that the patient and/or guarantor should be asked for payment of the balance in full and if the balance was not paid in full after it was demanded, the debt would not be in default.  (Doc. 102, Filed Under-Seal, Plaintiff's Ex. G, W. Holder Depo., at 59:6-15).

12

## SUMMARY OF ARGUMENT

Providence Hospital has a policy that all patient balances not paid by insurance are due, either at the time of service or at the time of discharge. Ms Church had a balance on the hospital's books that was over a year old and that was not paid at the time of service or at the time of discharge and this was the debt that Accretive was trying to collect.[1]

Accretive performs a number of services for the hospital, including the collection of medical accounts. The FDCPA, in the context here, does not apply to an account that was not in default, or alleged to be in default, when referred for collection. The hospital, although it informs patients at the time they are treated and/or admitted that their balances, not covered by insurance, are due either at the time of service or upon discharge, says that it does not consider a patient's account to be in default until it is charged off as "bad debt." Accretive claims, and the lower court found, that Ms Church's over one-year-old bill was not in default and therefore there was no FDCPA application. Whether the debt was or was not in default is the only issue in the case. All the other facts were largely undisputed.

---

[1] The balance was, apparently, the result of a mistake made in the hospital's billing department. After the suit below was filed the hospital decided not to attempt to further collection.

13

# ARGUMENT

## I.    INTRODUCTION

If the lower court is not reversed a large class of debt collectors will be exempt

from FDCPA coverage. The court in *Magee v. AllianceOne, Ltd*., 487 F. Supp. 2d

1024, (S.D. Ind. 2007) apply stated what is at issue here saying:

> This purpose [of the FDCPA] would be contravened if a creditor were
> unilaterally able to determine when and if an account was in default for
> FDCPA purposes and therefore whether the provisions of the FDCPA
> applied to the debt collection activities of the collection agency it hires.
> For example, because 15 U.S.C. § 1692a(6)(F)(iii) looks at whether the
> loan was in default at the time it was "obtained" by the person involved
> in the collection activity, and not whether it is in default at the time the
> collection activity takes place, KeyBank could have referred Magee's
> account to AllianceOne for collection one day and declared her account
> to be in default the next, thereby allowing AllianceOne to engage in
> collection practices that are prohibited by the FDCPA (because the loan
> was not in default when AllianceOne "obtained" it) and at the same time
> giving KeyBank the "rights upon default" afforded it under the
> Agreement.

*Id. at* 1027-28.

It was undisputed below that Providence Hospital has a policy, unlike any of

Accretive's other clients that could be identified by its corporate representative, that

all patient balances were either due on discharge or at the time of service. Also

undisputed was that fact that Providence puts its patients on notice of this policy, "so

that they know what to expect."

14

Ms. Church believed that she had been turned over to a collection agency even though she had carefully timed her procedure so that all of her medical bills should have been covered by insurance. If Accretive had complied with the FDCPA she would have been notified of her rights under the FDCPA, including her right to dispute the alleged debt. Instead she was warned that her account may "move further into collections." Moreover, since Accretive claims that it already uses the mandates of the FDCPA as a guideline for its collectors, it would cost Accretive little or nothing to comply with the Act.[2]

## II. CHURCH'S DEBT WAS IN DEFAULT BECAUSE IT WAS NOT PAID ON DISCHARGE OR AT THE TIME OF SERVICE.

There is no doubt that Church's debt was in default under any reasonable definitation. Courts have defined default in varaious ways for FDCPA purposes. The court in *F.T.C. v. Check Inv'rs, Inc.*, 502 F.3d 159, 172 (3d Cir. 2007) defined default as, "'the omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due.' Blacks Law Dictionary 449 (8th ed. 2004)."[3] Other courts have looked at the contract between the parties. See *De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir. 2011) ("Although the Act does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable

---

[2] See Doc. 115 at p. 11 (MFS voluntarily incorporates many of the substantive requirements of the FDCPA into its policies.)
[3] Church's debt undisputedly meets this definition.

15

law governing the debt at issue"). *Prince v. NCO Fin. Servs., Inc.,* 346 F. Supp. 2d 744, 748 (E.D. Pa. 2004)(must first look to contract between creditor and debtor and any legal or regulatory authority); and *Skerry v. Massachusetts Higher Education Assistance Corp*., 73 F.Supp.2d 47 (D.Mass.1999) (referring to regulatory definition applicable to student loan).

The creditor's definition of default may also be relevant. The deMayo FTC letter states that in the absence of any other authority, it would look to a creditors "reasonable, written guidelines . . . to determine when an account is 'in default', as long as those policies were applied consistently, designed for a legitimate purpose and not for circumventing the FDCPA." deMayo, Fed. Trade Comm'n, Informal Staff Op., 2002 WL 32809497 (May 23, 2002).

On the other hand, the courts and the FTC uniformly agree that "default" cannot be determined unilaterally by arrangement between creditor and collector meant to circumvent FDCPA coverage. *See, e.g.*, *Hartman v. Meridian Financial Services*, 191 F.Supp.2d 1031 (W.D.Wis. 2002) (rejecting definition of default in contract between creditor and collector); *Winterstein v. CrossCheck, Inc.,* 149 F. Supp. 2d 466, 470 (N.D. Ill. 2001)(rejecting arrangement between creditor and collector which purported to assign account to collector at inception although collector was not involved in account until after it went to collections, characterizing

16

the technique as "an effort to exalt form over substance").

In *Hartman* The defendant, Meridian, argued, as Accretive does here, that its collection activities came within the Section 1692a(6)(F)(iii) exemption for collectors who obtain debts for collection for another <u>before</u> default. The *Hartman* court disagreed because, much like Accretive, Meridian did not collect current payments for the creditor, only those that were past due. See *Hartman* 191 F. Supp. 2d at 1036-37 ("Defendant did not provide billing services other than debt collection for any of Peppertree's current accounts"). The same is true here. Before refering a debt to Acccretive, Providence typically bills the patient who owes a balance for 60 days. If no payment is made, the status of the account changes from Class "A" to Class "I" and then referred to Accretive for third-party collections.  At that point, the patient has been notified, at least twice, that Providence considers the money owned and the patient has failed to pay. When the referral is made, Accretive sends the form collection letter that is the subject of Church's case. That letter identifies Accretive, doing business as Medical Financial soloutions ("MFS") as a third-party collector and warns that failure to pay will result in the account moving "further into collections."

Accretive typically attempts collections for another six months before sending the account back to Providence. In applying the term "default," for purposes of the

17

debt collector definition, courts may also look to any agreement between the original creditor and the debtor, or any applicable statutory or regulatory authority. *Prince v. NCO Fin. Servs., Inc.,* 346 F. Supp. 2d 744, 748 (E.D. Pa. 2004)(must first look to contract between creditor and debtor and any legal or regulatory authority); *Hartman,* 191 F.Supp.2d 1031 (W.D.Wis. 2002) (relying on contractual provision stating default occurred when payment was missed*); Skerry v. Massachusetts Higher Education Assistance Corp.*, 73 F.Supp.2d 47 (D.Mass.1999) (referring to regulatory definition applicable to student loan).

The length of time after a debt becomes outstanding and the manner in which the debt is treated are also factors. See, *McKinney v. Cadleway Properties, Inc.,* 548 F.3d 496, 501-02 (7th Cir. 2008) (a debt which was two years in arrears when it was assigned to third party was deemed by the court to be in default, even in the absence of the creditor's determination of default). See also, *Echlin v. Dynamic Collectors, Inc.*, 102 F. Supp. 3d 1179 (W.D. Wash. 2015) a case with facts very much like the facts here wherein the court stated:

> Objective indicators of the debt's status are limited in this case. The last payment made on Echlin's PeaceHealth account was December 19, 2013. Huerta–Dowell Dec., Ex. 3. PeaceHealth sent Echlin letters regarding his account balance in January, February, and March 2014. *Id.* No payments were made in response to these letters. *Id.* PeaceHealth's Patient Financial Policy provides that "[p]atients with outstanding balances may have their accounts forwarded to collection agency after 90 days of nonpayment." Dkt. 9 ¶ 12. On April 14, 2014, Dynamic sent

18

a letter to Echlin on PeaceHealth letterhead regarding his account. Dkt. 9 ¶¶ 17–18, 21. In light of the limited evidence in the record, the Court cannot conclude as a matter of law that Echlin's debt was not in default when Dynamic sent the April 2014 letter. The Court therefore denies Dynamic's motion on this ground.

*Id*. at, 1185-86.

At least one court has held that Accretive is subject to the FDCPA. In *Anger v. Accretive Health, Inc.,* 2015 WL 5063269 (E.D. Mich. Aug. 27, 2015), the court addressed the identical collection practices, the same form letter and Accretive's argument that an account is not in default at the time the letter was sent. The *Anger* Court disagreed saying:

> Accretive Health is a debt collector under the FDCPA. Accretive sent two letters to Anger which gave a sense of urgency and indicated that Accretive Health treated Anger's debt as if it was in default. For instance, the first letter dated May 1, 2014, says "[o]ur company works directly with St. Mary's of Michigan Standish Hospital to ensure your account is protected from moving *further into collections*." See, (Doc. # 13–2) (emphasis added). The phrase "further into collections" gives the impression that the account is already defaulted and collection activity has begun. See, *Church,* 2014 WL 7184340, at *6 noting ("[the] language in the letter warning that [plaintiff's] account may move 'further into collections' suggests that default had already occurred.").

*Id.,* slip op. 2.

The Court below made the following observations when it granted Accretive's Rule 56 motion:

> The January 17 letter marked the first collection effort directed at Church by anyone at any time vis a vis the subject account. As of

19

January 12, hospital business office representatives had not reviewed Church's account, deemed it uncollectible, or taken any steps to refer it to a collection agency. That account still was listed as an active AR account on Providence's financial books. All of these facts and circumstances are flatly inconsistent with the notion that Church's account was "in default" as of January 12, 2014, when it was first assigned to Accretive Health. (Doc. 111 p. 18).

The hospital's representative, Donna Bragg testified, however, that due to the age of the account, over a year, it was referred to Accretive for collection. By demanding payment and sending the account to a third party agency for collections, Providence Hospital certainly treated the debt as if was in default. See *Simmons v. Med-I-Claims*, 2007 WL 486879, slip op. at 8 (C.D. Ill. Feb. 9, 2007)(Previous referral to collector "cuts against" assertion that the account was not in default).

"In applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *Alibrandi v. Financial Outsourcing Services, Inc.,* 333 F.3d 82, 87 (2nd Cir.2003). However, referring a debt to a third-party collector is itself an indication that the debt was in default at that time. *Id*., at 88 ("If First Union hired North Shore to pursue Alibrandi's debt, North Shore's self-identification as a debt collector constituted a declaration by First Union that Alibrandi's debt was in default."). As in *Alibrani,* Providence's re-classification of

20

the account and referral to MFS "underscored a change in [Providence's] approach to the debt." *Alibrandi*, 333 F.3d at 87-88.

The Court's holding below, that a debt is in default only after the referral to MFS and only after it is deemed uncollectable, and written off as bad debt, is unreasonable. At the point of the referral, Providence, typically, has already adjudicated the account through the insurance company, identified the amount owed by the patient and given the patient two billing statements and 60 days to pay. What else need happen in order for the debt to be in default? The debt at issue herein was over a year old when the collection letter at issue was sent.

An examination of the trial court's finding should start with a review of the Providence's actual policy as reflected in the record. Accretive denies that default occurs at any time during the six months of collections, during which it exhausts "all possible collection efforts." Instead, it insists that default occurs when the debt is written off as "bad debt" and claims that to be Providence's policy.

Nothing Providence's bad debt policy addresses "default." In her deposition Providence Hospital's representative, Donna Bragg, simply parroted Accretive's legal position that default only occurs as it "has exhausted all possible collection efforts," but nowhere, in the 500 plus pages of policy and other documents produced, is that position reflected in any written statement. In fact, the policy manual is silent

21

as to when an account is considered in "default." Nor did Accretive point to any written manifestation a policy regarding default, much less the "default equals bad debt" statement outside the policy manual.  In short, there was no evidence of any such policy existing for any purpose other than to allow Accretive to avoid liability below. Because there has been no evidence of any written policy supporting the "default equals bad debt" position, this Court should reject it.

There was ample evidence offered, however, that Providence's policy was that all unpaid balances were due at the time of service or at when a patient was discharged. Even assuming that Accretive's "default equals bad debt" definition is the hospital's policy, it should be rejected. The fundamental problem with Accretive's position is that it conflates two distinct terms that describe two independent characteristics of a debt. "Default" describes the legal status of a debt. Whether a debt is in "default" determines the legal rights and liabilities of the contracting parties. On the other hand, the term "Bad Debt" is an accounting term which turns on the practical collectability of a debt.  Even Mr. Holder was careful to limit his opinion to the "accounting" aspects the debt and did not offer any opinion as to the legal status of the debt.  (Holder Depo., pp. 18, 39-44).

It makes no sense to say that "default" never occurs until *after* "all possible collection efforts are exhausted."  That assumes that "all possible" collections (which

22

would necessarily include a lawsuit) occur prior to a default.   After all, all "possible" or all "reasonable" collection efforts would certainly include (if not require) a lawsuit, assuming the collection suit is viable.   Necessarily, the debt would have to be in default in order for such a suit to be brought.

Applying the principles above to the facts of this case results in the following conclusions:

(1)    The alleged "default" equals "bad-debt" policy relied upon by Accretive should be rejected by the Court because (a) it is not reflected in Providence's policies; (b) it makes no sense because it equates "default" with "uncollectability"; and (c) it is inconsistent with the FDCPA, because it would exempt from FDCPA coverage all of the "reasonable collections activities" that necessarily lead up to "bad debt" write off;

(2)    Providence's actual written billing and collection procedure reveals a clear point at which an account is should be considered in "default" for purposes of the FDCPA; and

(3)    There is more than ample evidence to show that Providence considered Church's account to be in default when it referred the account to Accretive for collections.

The FDCPA was enacted in order to "eliminate abusive debt collection

23

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  It is described as an "extraordinarily broad" remedial, consumer protection statute.  *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1191 (11th Cir.2010); *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 611 (6th Cir.2009); *Kelliher v. Target Nat. Bank,* 826 F. Supp. 2d 1324, 1330 (M.D. Fla. 2011); *accord Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1304 (11th Cir. 2015)("The FDCPA is nothing short of a straightforward statutory directive to hold debt collectors accountable for abusive, deceptive, and unfair debt collection practices.").

Accretive's arbitrary designation of default as occurring when an account is declared to be "bad debt" is inconsistent with the FDCPA in at least two ways.  First, allowing a collector or its client to wait until the end of the collections process to declare a debt in default would exempt all the collections efforts prior to the bad debt charge-off from FDCPA coverage, even if a third-party agency is hired.  This arbitrarily exempts from FDCPA activities by a third party collector otherwise regulated.  This level of manipulation has been rightly rejected by courts facing similar schemes and should likewise be rejected here.  *Alibrandi*, 333 F.3d at 88 ("The status of the debt would not have been alterable by the expedient of a letter

24

agreement between First Union and Financial Outsourcing."); *Hartman*, 191 F.Supp.2d 1031 (W.D.Wis. 2002) (rejecting definition of default in contract between creditor and collector); *Winterstein v. CrossCheck, Inc.,* 149 F. Supp. 2d 466, 470 (N.D. Ill. 2001)(rejecting arrangement between creditor and collector which purported to assign account to collector at inception although collector was not involved in account until after it went to collections, characterizing the technique as "an effort to exalt form over substance"); accord *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1485 (M.D. Ala. 1987)(rejecting interpretation which would  "limit the law severely and leave it open to easy evasion by simply adopting a different form of contract."

Also, as stated, hitching "default" to "bad debt" renders "collectability" the determining factor of whether or not the Act applies.  By use of the term "default," Congress meant that coverage was determined by the legal status of the debt - not the degree to which it is collectable.  There is no basis restricting the application of the FDCPA only to those accounts deemed uncollectable.

### III.   THE FACT THAT ACCRETIVE NOW RECOGNIZES THAT THE DEBT WAS NOT OWED IS IMMATERIAL.

Accretive argued below that because, under the facts now known, Church did not actually owe a balance to Providence there was no "default" and, therefore, no FDCPA coverage.  However, courts have uniformly held that whether the account is

in "default" is determined by how the account is treated by the creditor and collector, regardless of whether such treatment "due to a clerical mistake, other error, or intention." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012); see also *Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534 (7th Cir. 2003) (FDCPA applied because assignee treated debt as defaulted even though it was not owed); *Dunham v. Portfolio Recovery Associates, LLC,* 663 F.3d 997, 1002 (8th Cir. 2011)(FDCPA applies to individuals who are mistakenly dunned by debt collectors); *Isaac v. RMB, Inc.,* 2014 WL 3566069, slip op. at 9 (N.D. Ala. July 18, 2014)(same);; *Alhassid v. Bank of Am.,* N.A., 60 F. Supp. 3d 1302 (S.D. Fla. Nov. 17, 2014); *Donnelly-Tovar v. Select Portfolio Servicing, Inc.,* 945 F. Supp. 2d 1037, 1044-47 (D. Neb. 2013). "It makes little sense, in terms of the conduct sought to be regulated, to exempt an assignee from the application of the FDCPA based on a status it is unaware of and that is contrary to its assertions to the debtor. The assignee would have little incentive to acquire accurate information about the status of the loan because, in the context of the mistake in this case, its ignorance leaves it free from the statute's requirements." *Schlosser*, 323 F.3d at 538.

## **CONCLUSION**

The district court's judgment should be reversed, and the case should be remanded for further proceedings.

\s\Earl P. Underwood, Jr.
Earl P. Underwood, Jr.
UNDERWOOD & RIEMER, PC
Attorney for the Appellant
21 S Section Street
Fairhope, Alabama 36532
(251) 990.5558
epunderwood@alalaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of February, 2016 I have filed the brief for appellant with the Eleventh Circuit U.S. Court of Appeals CM/ECF Document Filing System and a copy of the brief for appellant and a copy of the record excerpt was served upon the following counsels of record via the United States mail, postage prepaid and properly addressed:

Claire M. Murray
Jennifer G. Levy
Kathleen A. Brogan
Kirkland & Ellis LLP
655 Fifteenth Street
Washington, DC 20005

Andrew B. Clubok
Kirkland & Ellis, LLP
601 Lextington Avenue, 40th Floor
New York, NY 10022

Sandy G. Robinson
Cabaniss Johnston Gardner Dumas & O'Neal
P. O. Box 2906
Mobile, Alabama 36652

Clerk of the Court *(Original plus 6 copies)*
US Court of Appeals for the Eleventh Circuit
56 Forsyth Street NW
Atlanta, GA 30303-2218

\s\Earl P. Underwood, Jr.
OF COUNSEL
